# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**H. JOSEPH HAMM,** *et al.*,

    Plaintiffs,  :

v.

           Case No. 2:22-cv-2068
           Judge Sarah D. Morrison
           Magistrate Judge Kimberly A. Jolson

**THUNDERBIRD GLOBAL DEVELOPMENT, LLC,** *et al.*, :

    Defendants.

## OPINION AND ORDER

This lawsuit centers on the transfer of interest in oil and gas rights in Jefferson County, Ohio (known as the "Stringer Interest"). (Compl., ECF No. 3.)

In 2021, a Belmont County jury awarded Plaintiffs[1] a roughly $1.5 million judgment against Defendant Thunderbird Global Development, LLC, pushing Thunderbird into bankruptcy. (*Id.*, ¶¶ 16–18; Exh. A.) *See In re Thunderbird Global Development LLC*, 2:21-bk-03962-DPC (Bankr. D. Ariz. filed May 20, 2021). While the bankruptcy was pending, Thunderbird transferred the Stringer Interest to Defendant TEXANOUSHA LLC. (Compl., ¶¶ 20, 25.) Plaintiffs allege that this transfer was fraudulent, and brought this action as a result. (Compl., ¶¶ 28–33.)

---

[1] Plaintiffs are H. Joseph Hamm; D. Joyce Yazombek, as Trustee of the D. Joyce Yazombek Revocable Living Trust; David A. Ellison; Elizabeth L. Ellison; and Alex J. Kolb, II. (Compl.)

The matter is now before the Court for consideration of Plaintiffs' Motion to Remand. (Mot., ECF No. 8.) Defendants[2] responded (Resp., ECF No. 14), and Plaintiffs filed their reply (Reply, ECF No. 18). For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for Remand.

I. BACKGROUND

### A. In 2019, Plaintiffs sued Thunderbird and Mr. Banik in Belmont County over title to certain oil and gas rights.

The dispute began in Belmont County, Ohio. Plaintiffs and the Thunderbird Defendants (Mr. Banik and Thunderbird) were in a dispute over the ownership of oil and gas rights spanning 155 acres of land (the "Belmont Interest"). (Resp., 2.) The Belmont County court found that the Thunderbird Defendants' ownership rights in the Belmont Interest had terminated, and quieted title for Plaintiffs. (*Id.*) The court then presided over a jury trial to resolve Plaintiffs' outstanding tort claims, and the jury returned a verdict of $1,390,439.36 for Plaintiffs. (*Id. See also* Compl., Exh. A.) The trial court awarded another $139,609.11 in attorney fees (together with the jury verdict, the "Belmont Judgments"). (Resp., 2. *See also* Compl., Exh. B.) Unable to pay the Belmont Judgments, Thunderbird filed for bankruptcy in May 2021. (*Id.*)

---

[2] In addition to Thunderbird Global Development, LLC and TEXANOUSA LLC, also named as Defendants are Cheyenne Oil Gas & Minerals, LLC, Christopher E. Banik, and Anousha Banik. (Compl.)

2

### B. While the bankruptcy was pending, Thunderbird sold the Stringer Interest to TEXANOUSHA.

On December 15, 2021, while the bankruptcy proceeding was still pending,[3] Thunderbird transferred the Stringer Interest to TEXANOUSHA for $7,500. (Compl., ¶¶ 20, 40. *See also* Compl., Exh. C.) At the time, Mr. Banik was the managing member of Thunderbird. (Compl., Exh. C.) Plaintiffs allege, on information and belief, that TEXANOUSHA was also "related to or affiliated with" Mr. Banik. (*Id.*, ¶ 46.)

### C. Plaintiffs filed suit in state court and Defendants subsequently removed the case to federal court.

As a result of the Stringer Interest transfer, Plaintiffs filed suit in Jefferson County's Court of Common Pleas. (Compl., ¶¶ 18–20.) The Complaint prays for the following relief:

> Plaintiffs demand that the transfer . . . be avoided and set aside; for injunctive relief against further disposition by the debtor, Defendant Thunderbird Global Development, LLC, the transferee, Defendant TEXANOUSHA LLC, or either of them of the Stringer Interest and any other property; for compensatory damages against each of the Defendants in an amount not to exceed the value of the transfer to the extent the transfer has harmed the Plaintiffs; for punitive damages [as] a result of Defendants' fraudulent actions attempting to defeat Plaintiffs' efforts to collect their Judgments, and such other relief as the Court deems equitable and proper.

(*Id.*, 8.) The Belmont Judgments were "unsatisfied" at the time Plaintiffs filed their Complaint. (Compl., ¶ 19; Answer, ECF No. 2, ¶ 19.)

---

[3] Although the bankruptcy proceeding was still pending on December 15, 2021, the Bankruptcy Court had converted the action from a Chapter 11 case to a Chapter 7. *See In re Thunderbird Global Development LLC*, 2:21-bk-03962 (Bankr. D. Ariz. Docket No. 87, filed Dec. 7, 2021). The bankruptcy has since been dismissed. *Id.* (Docket No. 117, filed Feb. 3, 2022).

3

Defendants timely filed a notice removing the matter to this Court, citing diversity jurisdiction. (ECF No. 1.) In response, Plaintiffs filed the Motion *sub judice*, arguing that the diversity statute's amount-in-controversy requirement had not been met. (Mot., 5–7.) Plaintiffs also move for costs, arguing that Defendants' Notice of Removal was "devoid of even fair support." (*Id.*, 7–8.)

## II.   LEGAL STANDARD

An action brought in state court can be removed to federal district court only if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal courts have diversity jurisdiction over civil actions when the action is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The party invoking federal jurisdiction bears the burden of proving, by a preponderance of the evidence, that jurisdiction is proper. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). The inquiry focuses on the facts as they existed at the time of removal. *Shupe v. Aslpundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014). Because federal courts are courts of limited jurisdiction, "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman*, 438 F.3d at 549–50 (citation omitted).

## III.   ANALYSIS

Plaintiffs argue that the amount in controversy is not satisfied and this Court lacks jurisdiction. (Mot., *generally*.) Accordingly, the Court must consider whether Defendants have proven it is more likely than not that the amount-in-controversy

4

threshold has been satisfied and, if not, whether Defendants must pay Plaintiffs' costs.

### A. Plaintiffs argue that their Complaint sought no more than $22,500 in damages.

Plaintiffs argue that the amount in controversy has not been met because they limited their damages to "an amount not to exceed the value of the transfer, [and] punitive damages." (Reply, 3.) They point to the removal statute, which states that when removal is grounded in diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed the amount in controversy[.]" (Mot., 6 (citing 28 U.S.C. § 1446(c)(2).) Because punitive damages for tort claims in Ohio are capped at two times the compensatory damages award, *see* Ohio Rev. Code § 2315.21(D)(2), Plaintiffs contend that they have demanded only $22,500 in damages—$7,500 (the value of the transfer) plus $15,000 (possible punitive damages). (Reply, 9.)

### B. Defendants argue that, under a fair reading of the Complaint, the value of the rights at issue exceeds $75,000.

Defendants argue that the face of the Complaint does not support Plaintiffs' interpretation. (Resp., 7.) First, Plaintiffs seek damages not to exceed the value of the transfer "against ***each of the Defendants***[.]" (*Id.* (quoting Compl., 8) (emphasis in Resp.).) Because there are five Defendants, they conclude that Plaintiffs seek a total of $37,500 in compensatory damages. (*Id.*)

Defendants next emphasize that the Court must aggregate the value of all relief sought. (*Id.*, 7 (citing *Driscoll v. Wal-Mart Stores E., Inc.*, No. 2:09-CV-00154, 2009 WL 4730709, at *1 (S.D. Ohio Dec. 10, 2009) (Sargus, J.)).) To this point, they

5

contend that even if the Court "tak[es] Plaintiffs at their word that they intended to seek only $7,500 in compensatory damages," Plaintiffs' specified monetary damages "[do] not capture the extent of the actual damages being sought." (*Id.*, 8.) Indeed, Plaintiffs have alleged additional counts with compensatory damages to be determined at trial, and seek injunctive relief, punitive damages, and "such other relief as the Court deems equitable and proper." (*Id.* (quoting Compl., 8).) Defendants thus argue that the value of the relief sought exceeds $75,000. (*Id.*, 8–10.)

More specifically, Defendants argue that the amount in controversy is satisfied because Plaintiffs seek to protect the $1.5 million Belmont Judgments, as evidenced by the prayer for injunctive relief prohibiting Thunderbird and TEXANOUSHA from further transferring any assets. (Resp., 7.) In other words, the value of the rights being litigated amounts to $1.5 million, and the amount-in-controversy threshold has thus been met. (*Id.* (citing *Davis v. Kindred Nursing Ctrs. E. LLC*, No. 2:05-CV-1128, 2006 WL 508802, at *2 (S.D. Ohio Mar. 2, 2006) (Graham, J.)).)

### C. The amount in controversy is determined from the plaintiff's perspective.

In the Sixth Circuit, the amount in controversy is determined "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (internal quotation and citation omitted). Certainly, a plaintiff, as master of her own complaint, can avoid removal by suing for less than $75,000. *Total Quality*

6

*Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:21-cv-695, 2022 WL 2062694, at *3 (S.D. Ohio June 7, 2022) (Cole, J.) (to be reported). But a reviewing court must conduct a "fair reading" of that complaint. *Shupe*, 566 F. App'x. at 478 (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (internal quotation and citation omitted)). Accordingly, this Court's inquiry is an objective one that looks beyond Plaintiffs' assertions.[4] *Buckeye Recyclers v. CHEP USA*, 228 F. Supp. 2d 818, 823, 828 (S.D. Ohio 2022) (Rice, J.).

Here, Plaintiffs' Complaint asserts five counts and seeks various forms of relief. However, the value of the injunctive relief alone satisfies the amount in controversy, and is thus dispositive. The Court need not and does not address the value of the remainder.

### D. The injunctive relief sought equals the value of the Belmont Judgments.

For purposes of calculating the amount in controversy, injunctive relief is considered from the plaintiff's perspective, focusing on "the economic value of the rights he seeks to protect" and the "potential injury [he] seeks to prevent." *Buckeye Recyclers*, 228 F. Supp. 2d at 821, 822–23 (citing *Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437 (6th Cir. 1954)). In other words, the court makes an objective valuation of the plaintiff's future losses if he does not prevail. *Id.* at 823, 828.

---

[4] This is particularly important in Ohio, where a plaintiff can recover a greater amount of damages than alleged in a complaint. *Total Quality Logistics*, 2022 WL 2062694, at *3. "As a result, a defendant facing suit in Ohio court is free to remove an action, even if the complaint purports to limit relief to less than $75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold." *Id.*

7

This Court's analysis in *Buckeye Recyclers* is instructive. Buckeye Recyclers, a wooden pallet recycling company, regularly purchased pallets in bulk from distribution and wholesale sites. *Id.* at 819. Although CHEP, a pallet rental company, required its customers to return rented pallets, many would get lost in the stream of commerce, and end up at sites from which Buckeye Recyclers made bulk purchases. *Id.* Asserting its continued ownership of the pallets in Buckeye Recyclers' possession, CHEP threatened legal action. *Id.* at 819–20. Instead, Buckeye Recyclers sued CHEP, seeking a declaration that Buckeye Recyclers had the right to use and profit from CHEP pallets that inadvertently wound up in its possession. *Id.* at 819–20. Buckeye Recyclers argued that CHEP no longer had a valid property interest in the pallets, giving Buckeye Recyclers the right to use and profit from them. *Id.* at 820. Evaluating the amount in controversy, this Court assessed the value of the right Buckeye Recyclers sought to protect by calculating the total revenue it stood to lose if it could not use the CHEP pallets. *Id.* at 825–28.

Using the same logic, the Court here concludes that the value of the injunction equals the value of the Belmont Judgments—what Plaintiffs stand to lose if they do not prevail. At the time the Complaint was filed, Plaintiffs held outstanding judgments worth $1,530,048.47 against Thunderbird. (Compl., ¶¶ 17–19.) If the Court does <u>not</u> grant the injunctive relief Plaintiffs seek, Thunderbird and TEXANOUSHA may continue to dispose of assets, jeopardizing Plaintiffs' ability to collect on the Belmont Judgments.

8

The plain language of Plaintiffs' Complaint further supports the conclusion. Plaintiffs not only request injunctive relief and compensatory damages, but also punitive damages for Defendants' "fraudulent actions attempting to defeat Plaintiffs' efforts to collect [the Belmont] Judgments. " (Compl., 8.) Thus, the Court agrees with Defendants—Plaintiffs seek to protect the ability to collect the Belmont Judgments vis-à-vis the requested injunction. The economic value of that ability is $1,530,048.47.

Plaintiffs offer two arguments in favor of the opposite conclusion. Neither is availing. Plaintiffs first argue that the Belmont Judgments are "simply a factor" going to Defendants' intent to defraud Plaintiffs by transferring the Stringer Interest. (Reply, 5–6.) While that may be true, it does not negate or proscribe the Belmond Judgments' effect on the amount in controversy.

Plaintiffs next argue that the value of the injunctive relief is limited to the value of the asset transferred. (Reply, 9 (citing Ohio Rev. Code § 1336.07(3)(a)).) This argument fails for two reasons. First, the cited statute does not limit relief in the way Plaintiffs suggest. *See* Ohio Rev. Code § 1336.07(3)(c) (providing for "any other relief that the circumstances may require," in addition to the value of the asset transferred). And second, Plaintiffs' argument ignores the plain language of their Complaint. The prayer demands "injunctive relief against further disposition by the debtor, Defendant Thunderbird Global Development, LLC, the transferee, Defendant TEXANOUSHA LLC, or either of them of the Stringer Interest **and any other property**." (Compl., 8 (emphasis added).)

9

### E. Plaintiffs are not entitled to costs.

The Court next addresses whether Defendants must cover Plaintiffs' costs. Congress created 28 U.S.C. § 1447(c) to discourage the frivolous removal of cases to federal court through fee shifting, while ensuring it would not deter a party from removing when proper. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140–41 (2005). In striking this balance, courts may shift fees when the removing party lacked "an objectively reasonable basis for seeking removal." *Id.* (internal quotations and citations omitted). Courts may depart from this general rule in unique circumstances, but the award still must be guided by the overarching principles of § 1447(c). *Id.*

Here, the Court has found Defendants' argument in favor of diversity jurisdiction to be meritorious. Thus, Defendants had an objectively reasonable basis to seek removal and Plaintiffs are not entitled to costs.

## IV. CONCLUSION

Because Defendants have proven by a preponderance of the evidence that the amount in controversy in this case exceeds the statutory threshold of $75,000, Plaintiffs' Motion to Remand is **DENIED.**


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**