UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**H. JOSEPH HAMM, *et al.*,**

        Plaintiffs, :

  v.

        Case No. 2:22-cv-2068
        Judge Sarah D. Morrison
        Magistrate Judge Kimberly A. Jolson

**THUNDERBIRD GLOBAL DEVELOPMENT, LLC, *et al.*,** :

        Defendants.

## OPINION AND ORDER

Plaintiffs[1] filed this action in the Jefferson County Court of Common Pleas, asserting claims for Ineffective Transfer, Fraudulent Transfer, Conversion, Fraud, and Conspiracy. (Compl., ECF No. 3.) A short time later, Defendants[2] removed the matter to this Court (ECF No. 1) and filed their Counterclaim for Restitution/Unjust Enrichment, Conversion, and Slander of Title (Countercl., ECF No. 2).

The case is now before the Court for consideration of Plaintiffs' Motion to Dismiss the Counterclaim. (Mot., ECF No. 9.) Defendants responded in opposition (Resp., ECF No. 13) and Plaintiffs filed a reply (Reply, ECF No. 19). On the Court's

---

[1] Plaintiffs are H. Joseph Hamm; D. Joyce Yazombek, as Trustee of the D. Joyce Yazombek Revocable Living Trust; David A. Ellison; Elizabeth L. Ellison; and Alex J. Kolb, II. (Compl.)
[2] Defendants are Thunderbird Global Development, LLC, TEXANOUSHA LLC, Cheyenne Oil Gas & Minerals, LLC, Christopher E. Banik, and Anousha Banik. (Compl.)

request (ECF No. 26), the parties filed additional briefs on whether *Colorado River* abstention applies and, if not, whether the case should be stayed pending resolution of ongoing state court litigation. (*See* ECF Nos. 27, 28, 30, 32.) For the reasons set forth below, Plaintiffs' Motion is **GRANTED in part** and **DENIED in part**.

I.  BACKGROUND

The following draws from the allegations in the Counterclaim[3] and the dockets and filings in related state and bankruptcy court proceedings.[4]

    A.  January 2019–May 2021: The Belmont County Litigation

In January 2019, Plaintiffs filed suit against Thunderbird and others in the Belmont County Court of Common Pleas over the ownership of certain oil and gas rights in Belmont County, Ohio (the "Belmont County Litigation"). (Countercl., ¶ 17.) *See Hamm v. The Lorain Coal & Dock Co.*, No. 19-CV-17 (Ohio Ct. C.P. filed Jan. 14, 2019). A Belmont County jury returned a $ 1.3 million verdict against Thunderbird alone. (Countercl., ¶ 20.) The court awarded Plaintiffs an additional $ 133,037.75 in attorney fees. (*Id.*, ¶ 21.) The verdict and fee award are collectively referred to as the "Belmont Judgments." Plaintiffs recorded certificates evidencing

---

[3] The factual allegations, but not legal conclusions, in the Counterclaim are considered as true for purposes of the pending motion. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

[4] This Court can consider and take judicial notice of facts in the public record without converting the Motion to Dismiss into one for summary judgment. *See Scarso v. Cuyahoga Cty. Dep't of Human Services*, 1990 WL 169645, at *2 (6th Cir. 1990) ("In determining the legal efficacy of plaintiffs complaint, the lower court properly took judicial notice of facts in the public record, specifically the records of state court proceedings.") (citations omitted).

2

the Belmont Judgments in Belmont and Monroe Counties (the "Certificates of Judgment"). (*Id.*, ¶¶ 24–25.)

Thunderbird appealed the Belmont Judgments to the Seventh District Court of Appeals. (*Id.*, ¶ 23.) *See Hamm v. The Lorain Coal & Dock Co.*, No. 20 BE 0030 (Ohio Ct. App. filed Oct. 9, 2020). Though Thunderbird moved to stay execution of the Belmont Judgments or reduce the required bond, those motions were denied. (Resp., 2.)

### B. May 2021–February 2022: The Bankruptcy Proceedings

Unable to satisfy the Judgments or post bond, Thunderbird filed for Chapter 11 Bankruptcy. (Countercl., ¶ 28.) *See In re Thunderbird Global Development LLC*, 2:21-bk-03962-DPC (Bankr. D. Ariz. filed May 20, 2021). Thunderbird continued to operate its business—including buying and selling mineral rights—while the bankruptcy was pending. (*See* Countercl., ¶¶ 29–33.) On December 15, 2021, Thunderbird sold certain oil and gas rights in Jefferson County, Ohio (the "Stringer Interest") to TEXANOUSHA. (*Id.*, ¶ 34.)

Thunderbird's bankruptcy was dismissed effective February 15, 2022. (*Id.*, ¶ 39.) Before the case was closed, the Bankruptcy Court issued a Payment Order directing Thunderbird to transfer $ 67,856.33 (the "Funds") to Plaintiffs, through bankruptcy counsel.[5] (*Id.*, ¶ 40.) *See also In re Thunderbird*, 2:21-bk-03962-DPC (Bankr. D. Ariz., ECF No. 123). Thunderbird complied (Countercl., ¶ 41), but later

---

[5] Pursuant to the Payment Order, an additional $ 9,000 was paid to the Trustee. (Countercl., ¶ 40.) *See also In re Thunderbird*, 2:21-bk-03962-DPC (Bankr. D. Ariz., ECF No. 123).

3

moved to have the Funds returned, *see In re Thunderbird*, 2:21-bk-03962-DPC (Bankr. D. Ariz., ECF No. 130). The Bankruptcy Court denied the motion. *Id.* (Bankr. D. Ariz., ECF No. 138).

### C. March 2022–Present: Concurrent Federal and State Litigation

#### 1. Belmont County Litigation

On March 30, 2022, Ohio's Seventh District Court of Appeals reversed the Belmont Judgments. *Hamm*, No. 20 BE 0030, 2022 WL 1166615, at *12 (Ohio Ct. App. Mar. 30, 2022) (the "Reversal Decision"), *reh'g denied*, 2022 WL 3076220 (Ohio Ct. App. July 5, 2022), *appeal denied*, 199 N.E.3d 554 (table) (Ohio 2022). The Belmont County Litigation was remanded for a new trial. *Id.*

On remand, the parties filed several motions concerning the appropriate disposition of the Funds. Plaintiffs first filed a Combined Motion for Interpleader of Funds or Appointment of a Receiver, to Maintain the Status Quo, and to Stay the New Trial. The Belmont County Court of Common Pleas sustained Plaintiffs' motion and, on June 13, 2022, ordered the Funds to "be paid to the Belmont County Clerk of Courts . . . to be retained" until the court's further order. (*Id.*, PAGEID # 722–24.)

Thunderbird then filed a Motion for Restitution or, in the Alternative, Motion for Reconsideration of the Judgment Entry filed June 13, 2022. The Belmont County court overruled Thunderbird's motion, holding:

- The Funds were paid pursuant to the Payment Order and in partial satisfaction of the Belmont Judgments. Accordingly, Thunderbird's request for return of the Funds was denied;

4

- In the event the Ohio Supreme Court declined to hear Plaintiffs' appeal from the Reversal Decision, Plaintiffs were directed to file releases of the Certificates of Judgment recorded in Belmont and Monroe Counties.[6] Thunderbird's request for restitution relating to the release of those certificates was therefore conditionally sustained; and

- The Belmont County Clerk of Courts was appointed receiver of the Funds, and Thunderbird's motion for reconsideration of the June 13, 2022 Judgment Entry was denied.

(ECF No. 31-1, PAGEID # 726–27.)

The Belmont County Litigation is set for a new trial on July 13, 2023. (*See* ECF No. 28-4.)

### 2. Federal Litigation

Less than a month before the Reversal Decision issued, Plaintiffs filed this lawsuit, principally alleging that the December 2021 Stringer Interest transfer was fraudulent. (Compl.) Six weeks later (a month *after* the Reversal Decision issued), Defendants removed the action to this Court and filed their Counterclaim. (ECF Nos. 1, 2.)

The Counterclaim asserts Defendants' claims against Plaintiffs for Restitution/Unjust Enrichment (Count I), Conversion (Count II), and Slander of Title (Count III). (Countercl.) These claims stem from four alleged wrongs: (1) Plaintiffs' failure to release the Certificates of Judgment after the Reversal Decision (*see id.*, ¶¶ 51, 54, 58); (2) Plaintiffs' failure to return the Funds after the

---

[6] In a January 17, 2023 Brief on the application of the *Colorado River* abstention doctrine, Plaintiffs state that they "released the applicable Judgment Liens after the Ohio Supreme Court declined jurisdiction" of their appeal. (ECF No. 28, 4.) The brief does not include copies of any filings or recorded documents accomplishing that purpose, however.

5

Reversal Decision (*see id.*, ¶¶ 53, 54, 57); (3) Plaintiffs' failure to dismiss its Complaint in this litigation after the Reversal Decision (*see id.*, ¶ 56, 59); and (4) Plaintiffs' February 2022 letter (the "Ascent Letter") to Thunderbird's lessee, Ascent Resources – Utica, LLC, "contain[ing] slanderous and untrue statements regarding Thunderbird's title" to Ascent's leased interest, and Plaintiffs' further failure to inform Ascent of the Reversal Decision (*see id.*, ¶¶ 45–50). Plaintiffs now move to dismiss each claim. (Mot.)

## II.  MOTION TO DISMISS THE COUNTERCLAIM

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a

6

cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### A. The Counterclaim fails to state a claim for Restitution/Unjust Enrichment (Count I) or Conversion (Count II).

Defendants allege that Plaintiffs' failure to return the Funds after the Reversal Decision constitutes both unjust enrichment and conversion. (Countercl., ¶¶ 62–81.) Plaintiffs argue that Defendants fail to state either claim. (Mot.) The Court agrees.

Under Ohio[7] law, the "elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (internal quotation marks and citation omitted). And the elements of unjust enrichment are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without

---

[7] Federal courts sitting in diversity apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The forum state's choice-of-law rules determine which state's substantive law will apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Where, as here, "'neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)). Consequently, the Court applies Ohio substantive law.

payment[.]" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)).

The Funds were paid to Plaintiffs in partial satisfaction of the then-valid Belmont Judgments, and pursuant to an Order of the Bankruptcy Court. Unable to dispute that Plaintiffs legally came into possession of the Funds, Defendants argue that they became entitled to the Funds' return "at the time the Reversal Decision was rendered." (Resp., PAGEID # 582.) In other words, Defendants would have the judicial system make a "hot potato" of the Funds, bouncing them back-and-forth between the parties with each entry on the appeals court's docket. Crucially, though, Defendants cannot demonstrate a right to possession of the Funds at the time of the alleged conversion or Plaintiffs' unjust retention of them. Promptly upon receipt of the Reversal Decision, Plaintiffs moved the Belmont County court to interplead the Funds or to appoint a receiver. The court could have denied Plaintiffs' motion, and ordered that the Funds be returned to Defendants. But it chose, instead, to order the Funds be deposited with the Clerk of Courts. That was perfectly appropriate, given the posture of the Belmont County Litigation.

Plaintiffs' motion to dismiss Defendants' claims for Restitution/Unjust Enrichment (Count I) and Conversion (Count II) is **GRANTED**. Those claims are hereby **DISMISSED**.

      **B.**    **Defendants' claim for Slander of Title (Count III) survives to the extent it is based on the Ascent Letter.**

Defendants further allege that Plaintiffs committed slander of title by refusing to release the Certificates of Judgment when the Reversal Decision was

8

entered, by maintaining the instant action, and by sending the Ascent Letter. Except as to the Ascent Letter, Defendants fail to state a claim.

"Slander of title is a tort action which may be brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Green v. Lemarr*, 744 N.E.2d 212, 224 (Ohio Ct. App. 2000) (internal quotations and citation omitted). The claim requires proof that "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard for its falsity; and (4) the statement caused actual or special damages." *McClure v. Fischer Attached Homes*, 882 N.E.2d 61, 70 (Ohio Ct. App. 2007) (quotation and citation omitted).

*Failing to release Certificates of Judgment*. Defendants first allege that Plaintiffs committed slander of title by failing to release the Certificates of Judgment when the Reversal Decision was issued. "The relevant time period for a cause of action for slander of title is the time of publication"—ordinarily, when the allegedly slanderous document is filed with the county recorder. *Cairelli v. Brunner*, No. 18 AP 000164, 2019 WL 2005922, at *5 (Ohio Ct. App. May 7, 2019); *see also Green*, 744 N.E.2d at 224 ("Typically, slander-of-title cases involve documents filed against a particular piece of property by parties who claim an interest in the property."). The Certificates reflected valid judgments at the time they were recorded. Accordingly, they cannot form the basis of Defendants' claim. Defendants' argue for the opposite conclusion, citing *Mann v. Resolution T Co., L.L.C.*, No. 2015-

9

CA-5, 2014 WL 2567993 (Ohio Ct. App. June 6, 2014) for support. But *Mann* is distinguishable. There, the court overturned summary judgment on a slander of title claim by noting that the offending lien "may have been accurate when it was filed, [but] it became false once the debt was paid and [defendant] refused to remove the lien." *Id*. at *7–8. No such circumstance is alleged here. Plaintiffs sought reconsideration of, and thereafter appealed, the Reversal Decision. Until the Ohio Supreme Court declined to exercise jurisdiction, the Certificates of Judgment reflected valid judgments.

*Filing suit*. Defendants next allege that Plaintiffs' Complaint in this lawsuit is slanderous to TEXANOUSHA's title to the Stringer Interest. Defendants' Response offers nothing supporting this leg of their slander of title claim. Though Defendants have arguably abandoned the claim, *see Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007), Plaintiffs are entitled to Ohio's "litigation privilege [that] provides absolute immunity . . . from future lawsuits for statements made during and relevant to judicial proceedings." *Reister v. Gardner*, 174 N.E.3d 713, 715–16 (Ohio 2020) (citations omitted) (emphasis omitted); *see also State v. Brown*, No. 2021-0392, 2022 WL 17478559, at *4 (Ohio 2022) (publication forthcoming).

*Ascent Letter*. Finally, Defendants allege that Plaintiffs sent a letter to Ascent containing slanderous statements about Thunderbird's title to the interest that Ascent leased from Thunderbird. Plaintiffs argue only that Defendants "cannot establish any damages from th[is] alleged slander." (Mot., 11.) But the Counterclaim alleges that the Ascent Letter caused Ascent to deposit lease

10

payments in a suspense account, thereby depriving Thunderbird of access to those funds. (*See* Countercl., ¶ 48.) This allegation is sufficient to survive a motion to dismiss.

Plaintiffs' motion to dismiss Defendants' claim for Slander of Title (Count III) is **GRANTED** to the extent such claim is based on the Certificates of Judgment and the filing of this lawsuit and **DENIED** to the extent it is based on the Ascent Letter. Accordingly, the claim is hereby **DISMISSED in part**.

### III. ABSTENTION OR STAY

Because the Belmont County Litigation is ongoing and involves many of the same parties (or their privies), the Court sought the parties' input on:

- whether the *Colorado River* abstention doctrine applies, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (allowing a federal court to refrain from exercising jurisdiction for reasons of "wise judicial administration" and "comprehensive disposition of litigation" when there is a concurrent parallel action in a state or foreign court), or

- whether this case should otherwise be stayed pending the outcome of the Belmont County Litigation.

(ECF No. 26.) Neither party seeks the Court's abstention or a stay. (*See* ECF Nos. 27, 28, 30, 32.) Accordingly, the matter will proceed according to the case management schedule set on November 15, 2022 (*see* ECF No. 24). The deadline for submitting dispositive motions **will not** be continued.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Dismiss the Counterclaim is **DENIED** as to Defendants' Slander of Title (Count III) claim to the

11

extent such claim is based on the Ascent Letter. The balance of the Motion is **GRANTED**.

      **IT IS SO ORDERED.**

                                  /s/ Sarah D. Morrison
                                  **SARAH D. MORRISON**
                                  **UNITED STATES DISTRICT JUDGE**